UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| MICHAEL DESOUZANETO | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos.: | 3:13-CR-165-TAV-CCS-1 |
| | ) | | 3:14-CR-97-TAV-CCS-1 |
| UNITED STATES OF AMERICA, | ) | | 3:16-CV-277-TAV |
| | ) | | 3:16-CV-278-TAV |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

Before the Court are Petitioner's motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [*Desouzaneto I*, Doc. 50; *Desouzaneto II*, Doc. 25].[1] The petition challenges the propriety of Petitioner's career offender enhancement in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015)—which held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. 924(e), was unconstitutionally vague, and Sixth Circuit's decision in *Pawlak v. United States*—which cited *Johnson*'s invalidation of the ACCA residual clause as the basis for invalidating Section 4B1.2(a)(2)'s parallel provision, 822 F.3d 902, 911 (6th Cir. 2016) [*Id.*]. The United States responded in opposition to relief on July 7, 2016 [*Desouzaneto I*, Doc. 52; *Desouzaneto II*, Doc.

---

[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDSET") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed the instant petitions.

Petitioner was charged in two separate criminal cases, the first involved possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) [E.D. Tenn. Case No. 3:13-CR-165-TAV-CCS-1], and the second involved conspiring to distribute anabolic steroids, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(E)(i) [E.D. Tenn. Case No. 3:14-CR-97-TAV-CCS-1]. For purposes of clarity, all references to the first case [E.D. Tenn. Case No. 3:13-CR-165-TAV-CCS-1] will be denoted as *Desouzaneto I* and all references to the second case [E.D. Tenn. Case No. 3:14-CR-97-TAV-CCS-1] will be marked *Desouzaneto II*.

27]. Petitioner did not reply and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2. For the reasons discussed below, the motions will be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.     BACKGROUND

Petitioner was charged with two counts of possessing firearms as a felon, both in violation of 18 U.S.C. § 922(g)(1), two counts of possessing a silencer not registered to him in the National Firearms Registration and Transfer Record, both in violation of 26 U.S.C. §§ 5861(d), 5845(a)(7), and 5871, and one count of conspiring to distribute anabolic steroids, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(E)(i) [*Desouzaneto I,* Doc. 7; *Desouzaneto II*, Doc. 1]; all five counts carried a penalty of up to ten years' incarceration. On August 20, 2014, Petitioner pled guilty, pursuant to Rule 11(c)(1)(C) plea agreement, to the drug offense and one of the two § 922(g) offenses [*Desouzaneto I,* Doc. 36; *Desouzaneto II*, Doc. 2]. In that same agreement, he stipulated to possessing at least three firearms and conspiring to distribute at least 40,000 units of a Schedule III controlled substance [*Id.* ¶ 4(a)–(b), (k)–(m)], and agreed that a total term of 78 months' imprisonment with forfeiture and restitution of at least $60,600 would be an appropriate sentence [*Id.* ¶¶ 4(l), 6]. In exchange for Petitioner's plea and concessions, the United States agreed to dismiss the remaining § 922(g) and § 5861(d) offenses [*Id.* ¶ 3].

Because Petitioner's offense involved a "firearm . . . described in 26 U.S.C. § 5845(a)" and Petitioner had at least two prior convictions for crimes of violence—a 1998 Texas conviction for engaging in organized criminal activity (burglary) and a 2005 Tennessee conviction for aggravated assault, the United States Probation Office assigned Petitioner an enhanced base offense level under Section 2K2.1 of the United States Sentencing Guidelines [Presentence

2

Investigation Report (PSR) ¶¶ 29, 55, 56].[2] After a two-level enhancement based on the number of firearms stipulated when pleading guilty, Petitioner's adjusted offense level for the § 922(g) offense was twenty-eight [*Id.* ¶ 30]. He received a base offense level of eighteen for the drug offense based on the quantity of drugs possessed, which was enhanced to twenty-two as a result of the fact that the offense involved distribution of a controlled substance "through mass-marketing by means of an interactive computer service" and Petitioner maintained premises for the purposes of distributing a controlled substance [*Id.* ¶¶ 35–37, 41]. Petitioner received a combined offense level of twenty-nine under the multi-count grouping provision [*Id.* ¶¶ 42–45], resulting in a total offense level of twenty-six after a three-level reduction for acceptance of responsibility [*Id.* ¶¶ 47–49].

The United States Probation Office deemed Petitioner to be a career offender under Section 4B1.1 [*Id.* ¶ 46]. While the enhancement had no impact on Petitioner's total offense level, it did increase his criminal history category of III to a criminal history category of VI [*Id.* ¶¶ 58–59]. As a result, Petitioner received an advisory Guideline range of 120 to 150 months [*Id.* ¶¶ 76, 77]. Despite the fact that it amounted to a significant departure from the advisory range, this Court chose to accept the Rule 11(c)(1)(C) plea agreement and sentenced Petitioner to the agreed upon 78-month term on May 5, 2015 [*Desouzaneto I*, Doc. 45; *Desouzaneto II*, Doc. 20].

---

[2] The Guidelines set a general base offense level of fourteen for violating 18 U.S.C. § 922(g). U.S. Sentencing Manual § 2K2.1(a)(6). For offenders with one prior conviction for either a "crime of violence" or "controlled substance offense," the base offense level increases to twenty. U.S. Sentencing Manual § 2K2.1(a)(4). Offenders with two such convictions have a base offense level of twenty-four. U.S. Sentencing Manual § 2K2.1(a)(2). Offenders with two such convictions whose offense also involved a "(i) firearm that is described in 26 U.S.C. § 5845(a)" face an enhanced base offense level of 26. U.S. Sentencing Manual § 2K2.1(a)(1).

No direct appeal was taken and Petitioner's conviction became final for purposes of § 2255(f)(1) on May 19, 2015, at expiration of time to file an appeal. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes final when the fourteen-day period for filing a direct appeal has elapsed). Slightly over one year later, this Court received the instant petitions based on the *Johnson* decision.

## II.   TIMELINESS OF PETITIONS

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA residual clause amounted to a new rule made retroactively applicable on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (U.S. 2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). It is yet to be seen whether the same is true of the "new rule" that results from application of *Johnson*'s reasoning in the Guideline context. *See Pawlak v. United States*,

822 F.3d 902, 911 (6th Cir. 2016) (holding that *Johnson*'s vagueness analysis applies equally to the Guidelines and, as a result, that the parallel residual provision contained in Section 4B1.2 was void for vagueness); *but see In re Embry*, No. 16-5447, 2016 WL 4056056, at *1 (6th Cir. July 29, 2016) (recognizing that "it is not clear whether to treat *Pawlak* as a new rule that the Supreme Court has not yet made retroactive [to cases on collateral review] or as a rule dictated by *Johnson* that the Supreme Court has made retroactive"). The Court finds that it need not resolve the issue here, however, because Petitioner has failed to establish that application of the decision to his case would impact his sentence.

1. **STANDARD OF REVIEW AND ANALYSIS**

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

**III. ANALYSIS**

Petitioner asserts a single ground for relief, arguing that the *Johnson* decision removed his Texas conviction for engaging in organized criminal activity and Tennessee conviction for aggravated assault from Section 4B1.2(a)'s definition of "crime of violence" and that, without those convictions his base offense level and criminal history category were improperly enhanced

5

[*Desouzaneto I*, Doc. 50; *Desouzaneto II*, Doc. 25].[3] The United States opposes the requested relief for two reasons: (1) the new "rule" created by extension of the *Johnson* decision to the Guideline context has not been "made" retroactively applicable to cases on collateral review; and (2) Petitioner's sentence was based on his Rule 11(c)(1)(C) plea agreement, not the challenged career offender enhancement [*Desouzaneto I*, Doc. 52; *Desouzaneto II*, Doc. 27].

This Court agrees that Petitioner's sentence was based on his Rule 11(c)(1)(C) plea agreement and that Petitioner has failed to establish that application of the *Johnson* decision to his case would have impacted the sentence imposed, it declines to reach the alternative issue—retroactive application of the *Johnson* decision in the Guideline context.

A.  **Propriety of Sentence After the *Johnson* Decision**

Petitioner entered into a Rule 11(c)(1)(C) agreement with the United States on August 20, 2014 [*Desouzaneto I,* Doc. 36; *Desouzaneto II*, Doc. 2]. *See* Fed. R. Crim. P. 11(c)(1)(C) (permitting parties to agree that a specific sentence "is the appropriate disposition of the case").

---

[3]   The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in the *Johnson* decision. 135 S. Ct. at 2563.

Section 4B1.1 enhances a defendant's offense level if he or she qualifies as a "career offender," i.e., adult defendant whose offense of conviction is a "crime of violence or controlled substance offense" and who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Manual § 4B1.1(a). "Crime of violence" under the Guidelines is defined in an almost identical manner as "violent felony" under the ACCA. *See* U.S. Sentencing Manual § 4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

6

In that agreement, the parties stipulated to a total sentence of 78 months [*Id.* ¶ 6]. In exchange, the United States dropped three of the counts set forth in Petitioner's indictment—one count of violating § 922(g)(1) and two counts of violating § 5861(d), and agreed to a three-point reduction in Guideline range for acceptance of responsibility [*Id.* ¶¶ 3, 7]. Petitioner does not dispute that he entered the agreement voluntarily and with knowledge of its consequences [*Id.* ¶¶ 4 (acknowledging he was pleading guilty because he was in fact guilty)].

Rule 11(c)(1)(C) plea agreements are unique in that a "sentence imposed pursuant to [such an] agreement is contractual and not based upon the guidelines." *United States v. Febrez*, 391 F. App'x 329, 331 (4th Cir. 2010) (citing *United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005)); *see generally United States v. Hodge*, 306 F. App'x 910, 914 (6th Cir. 2009). In other words, absent an express statement in the agreement making the sentence dependent upon a guideline calculation, a sentence imposed pursuant to a Rule 11(c)(1)(C) plea is grounded in the negotiated terms alone. *United States v. Rivera-Martinez*, 607 F.3d 283, 287 (1st Cir. 2010); *see also United States v. Kling*, 516 F.3d 702, 704 (8th Cir. 2008) (explaining that "[a] plea agreement under Rule 11(c)(1)(C), like all plea agreements, is binding on both the government and the defendant, but . . . unique in that [it] . . . bind[s] . . . the court" after acceptance); *United States v. Pacheco-Navarette*, 432 F.3d 967, 972 (9th Cir. 2005) ("[T]he district court is not permitted to deviate from . . . sentences stipulated in [Rule 11(c)(1)(C)] agreements."); *United States v. Williams*, 260 F.3d 160, 165 (2nd Cir. 2001) ("[A] district court may accept or reject a Rule 11(c)(1)(C) sentence bargain, but may in no event modify it."). Petitioner's plea contains no such statement and thus the Court is forced to conclude that his term of imprisonment was derived from the carefully negotiated terms of the parties' Rule 11(c)(1)(C) agreement, not the career offender enhancement. *See United States v. Hernandez*, No. 16-cv-2431, 2016 WL

7

4541446, at *1 (D. Kan. Aug. 31, 2016) ("Mr. Hernandez was not sentenced under the Guidelines at all. He was sentenced pursuant to the parties' Rule 11(c)(1)(C) agreement, which expressly disavowed reliance on the Guidelines and provided for a lower sentence than the range determined by the probation officer as calculated in the [PSR]."); *accord United States v. Douglas*, 606 F. App'x 287 (6th Cir. 2015) ("Douglas is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) because Douglas's sentence was "based on" his Rule 11(c)(1)(C) agreement—which does not refer to a sentencing guidelines range—rather than a later amended crack cocaine sentencing range.").

To the extent that Petitioner relies on the constitutional origin of the error alleged as a basis for distinguishing the instant case from past decisions in which this Court has rejected collateral challenges based on errors in Guideline calculation, *see Higgins v. United* States, No. 3:12-cv-636, 2016 WL 526246, at *3 (E.D. Tenn. Feb. 9, 2016) (rejecting guideline challenge based on non-constitutional error because Rule 11(c)(1)(C) agreement meant that erroneous calculation did not rise to the level of a cognizable miscarriage of justice), he is mistaken. While the constitutional magnitude of a claim undoubtedly impacts cognizability under § 2255, see 28 U.S.C. § 2255 (limiting avenues of relief to sentences imposed "in violation of the Constitution or laws of the United States, . . . without jurisdiction[,] . . . in excess of the maximum authorized by law, or otherwise subject to collateral attack'), nature of an alleged sentencing error does nothing to alter the burden of proof on collateral review, i.e., Petitioner's obligation to establish that the erroneously calculated Guideline range had a substantial and injurious effect, *Reed v. Farley*, 512 U.S. 339, 353 (1994); ac*cord United States v. Benton*, No. 1:13-cr-25, 2016 WL 3654436, at *2 (S.D. Ohio July 8, 2016) (finding the *Johnson* decision inapplicable where career offender enhancement was overridden by application of higher offense level); *United States v.*

8

*Robinson*, No. 3:16-cv-202, 2016 WL 3166870, at *2 (N.D. Fla. May 18, 2016) (same). Petitioner has failed to establish any such effect and, thus, failed to establish that he is entitled to the requested relief.

**IV.    CONCLUSION**

For the reasons discussed above, Petitioner's § 2255 motions [*Desouzaneto I*, Doc. 50; *Desouzaneto II*, Doc. 25] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE